After the court had deliberated, it delivered the following decree:
The importance of this case is occasioned more by the magnitude of the debt, than any real difficulty or intricacy in the subject. — It must be determined on two points:
"Whether the defendant Hugh Rose has complied with the conditions of his bond, which was to pay 24,600?. 5s. with interest, in specie or indents, to the commissioners of flie. treasury, or their successors in office, in trust for the use of the state, on the 17th December 1788 ?
If he did not, whether the defendant Moultrie, in whose hands the bond was placed by the commissioners for the purpose of sueing the same, and recovering’ the debt, could legally cancel and release it without actually l’eceiving payment in specie or indents, according to the condition thereof?
That the condition of the bond was not complied with cannot he denied: however, there is no fraud, imputable to the defendant Mr. Rose in the transaction, liis conduct was fair and upright in every point of view. He positively swears, that when lie received his own and his security's name, which had been torn off the bond by the defendant Mr. Moultrie, and was sent him by his agent the defendant Mr. Tunno, he conscientiously believed the debt had been actually paid in indents, and that the account which he afterwards received and settled With Tunno confirmed him in his belief. The defendants Tunno and Moultrie both acknowledge that only a small part of the debt was .paid in indents, and that the remainder was satisfied by his (Timno’s) assuming payment of a number of demands against Moultrie; by the sale of two houses to him, and in various other ways.
The first point being thus disposed of, the second remains only to be determined, via. Whether the defendant *469 Moultrie, who acted as an attorney at law to sue for the debt, could legally release it without actual receipt of the indents or specie ? The cases of master and servant, &c. cited by the counsel for the state, although in some degree similar, are not immediately applicable to the present. Nor does the case of persons, appointed by letter of aetorncy, apply altogether, because they are generally vested with power to receive, compound, or compromise with debtors; but the authority of an attorney at law is materially different: and we cannot consider the attorney general in any other point of view, when suing for the debts due the state. Ife is to sue for and recover a debt. After judgment and execution his authority wan at an end. The judgment and execution evince it: the latter directing the sheriff to bring the money into court at a certain day, to be paid to the plaintiff; and it was formerly doubted whether payment to the attorney, was payment to the party; though it is now settled to be so. The cases in Salkeld and Blacksionc, cited by defendant’s counsel, are certainly good law, but they arc confined merely to the acts of the attorney iu the course of the proceedings in the cause, and do not relate to his receipt of his client’s debt. And in a case in Salkeld, 88, it is expressly declared by the court, that if an attorney suffer a judgment against his client, and he is not responsible, which means of ability to satisfy his client in damages, if the judgment be irregular; the court will set aside the judgment; for otherwise the defendant would have no remedy, and any one might be undone by that means. From the whole train of authorities, it is evident that he must actually receive the money, and that an ideal payment, or the receipt of any thing else in lieu of it, will not bind liis client. It cannot bo supposed that the defendant Turnio, on a moment’s reflection, could have imagined the defendant Moultrie was authorized to settle the debt in the manner he proposed anil did settle it; or that he could totally alter the state of the debt, and become the obligor instead of Rose: the idea is too absurd. Turnio, it is plain, was not authorised to make the nc-gociation he did; it was an unwarrantable speculation. *470 between Mm and Moultrie, on Rose and the state. Sup-p0ge y, was a caso between two individuals, it is reduced then to thi3 single point, on whom in justice and equity ol,Sht the loss to fall ? On the plaintiff, whose attorney released the debt without recovering the money? Or the defendant Rose, whose agent was in possession of funds to pay the debt; hut instead thereof speculated with them for his own advantage, and settled the debt in a manner which he was not authorized to do by his principal? Most certainly the loss must be the defendant Rose’s, according to the maxim which invariably prevails in courts Of law as well as equity, that the principal is civilly responsible for the acts of his agent: And though there is not any fraud imputed to the defendant Tunno, his irregular conduct must affect his principal. In the case of Latham ..and Sarrazin, lately determined in the court of common pleas, it was clearly settled, that an attorney ¿an do no act incompatible with the nature and cud of Ids authority: and that if he was to give a discharge or remit the debt without receiving it, Ins client would not he hound by it. The defendant Tunno having acted contrary to the trust or confidence reposed in him, the defendant Rose must seek redress against him, for whatever damages he may sustain. And as on. the one hand, the state would have been bound by the defendant Moultrie’s act, if he had actually received the specie or indents for Rose’s debt; so on the other hand, as he has not received the specie or indents, Rose shall not he released from payment, although his bond has been cancelled. Creditors would be placed in a perilous situation indeed, if by the combination of an attorney with the debtor or his agent, a receipt without payment of the money should be deemed sufficiently valid to discharge the debtor from his obligation. It is undoubtedly a hard case on the defendant Rose; but it is a hardship which every one is liable to, who reposes so unlimited a confidence in another as he did in the defendant Tunno; who though a party h\ this suit, yet as there was no privity of contract between the state and hirm, emmet be decreed to pay the debt.
*471 It is therefore ordered and decreed, that it he referred to the master to ascertain the sum either in indents or specie that has been actually paid to the defendant Moul-trie on account of the defendant Rose’s bond, and to report the balance which is still owing and unpaid: That the bond notwithstanding the receipts thereon, shall be considered a subsisting contract, and the defendant and. his security still liable for the payment of what shall be reported due. Also, that the mortgage given by the said defendant Rose as an additional security he deemed an&held as still binding, notwithstanding the acknowledgement of satisfaction thereof, the same having been ills* gaily vacated, without a valuable consideration. And lastly, that the defendant H. Rose do pay the costs of complainant, and the costs of the defendants shall be paid by them respectively..